[731 NYS2d 197]

In the Matter of MARTIN ERIC MARKS, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, October 9, 2001

## APPEARANCES OF COUNSEL

*Grace D. Moran,* Syosset (*Muriel L. Gennosa* of counsel), for petitioner.

*Gentile Brotman Maltz & Benjamin, L. L. P.,* New York City (*Howard Benjamin* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

The petitioner served the respondent with a petition containing 14 charges of professional misconduct. The Special Referee sustained all 14 charges after a hearing. The petitioner now moves to confirm the findings of the Special Referee and to impose such discipline upon the respondent as the Court deems just and proper. The respondent has submitted an affidavit in response in which he does not contest the findings of the Special Referee, offers mitigation, and submits that the appropriate sanction to be imposed should be a suspension of one year.

Charge One alleges that the respondent failed to properly cooperate with the petitioner in its investigation of three *sua sponte* complaints initiated upon notice from the Lawyers' Fund for Client Protection of certain irregularities in the respondent's IOLA accounts, in violation of Code of Professional Responsibility DR 1-102 (a) (5) and (8) (now [7]) (22 NYCRR 1200.3 [a] [5], [7]).

By letter dated August 22, 1997, the petitioner informed the respondent that he was the subject of a *sua sponte* complaint based upon notice that a check drawn upon his Citibank IOLA account was returned for insufficient funds. The petitioner directed the respondent to submit, within 20 days, a written explanation of the circumstances which caused his check to be dishonored, as well as specific bank records for the preceding six month period. When that letter was returned to the petitioner indicating "Forwarding order expired," the petitioner sent it to another address on or about September 8, 1997. No response was received.

By certified letter dated October 29, 1997, the petitioner advised the respondent that his failure to cooperate could, in and of itself, constitute professional misconduct and requested his response within five days. The petitioner received a written response dated November 7, 1997. The respondent failed to produce the records requested.

By certified letter dated December 4, 1997, the petitioner requested the bank records within 10 days. By certified followup letter dated January 9, 1998, the petitioner advised the respondent of his obligation to cooperate and requested his response within five days. No response was received.

By certified letter dated January 28, 1998, the petitioner advised the respondent that if it did not receive his written response within five days, together with an explanation of his failure to cooperate, a motion for his interim suspension would ensue.

By letter dated February 11, 1998, the petitioner acknowledged receipt of the respondent's facsimile transmission and requested his production of the requested records by March 15, 1998. No response was received by the date indicated. The petitioner received partial records on March 23, 1998.

By letter dated April 22, 1998, the petitioner requested that the respondent produce, within 10 days, specified documents and checks relating to the underlying real estate transaction from which the subject check was issued. No response was received.

By certified letter dated May 4, 1998, the petitioner notified the respondent of a second *sua sponte* complaint based upon notification from the Lawyers' Fund for Client Protection indicating a "Pre-Authorization DB" from the respondent's IOLA account which was returned for insufficient funds. The petitioner sought, within 20 days, the respondent's written explanation of the circumstances which caused the check to be dishonored, along with specific bank records for the preceding six months. When no response was received, the petitioner sent the respondent a second certified letter dated May 14, 1998, advising him that failure to cooperate with its investigation could, in and of itself, constitute professional misconduct and requested a response within five days. No response was received.

By certified letter dated May 27, 1998, the petitioner reminded the respondent that it had not received a response to its recent inquiries regarding the first *sua sponte* matter. The petitioner reminded the respondent of his obligation to cooperate within five days, after which a motion for his interim suspension would ensue. The respondent's reply was not received until June 15, 1998.

When the respondent failed to reply to requests concerning the second *sua sponte* matter, the petitioner sent the respondent a certified letter dated May 24, 1998, reminding him of his obligation to cooperate within five days or risk a motion for his interim suspension.

By letter dated June 12, 1998, the petitioner notified the respondent of a third *sua sponte* investigation based upon

notification by the Lawyers' Fund for Client Protection indicating that a "Pre-Authorization DB" to his IOLA account had been returned for insufficient funds. The petitioner requested, within 20 days, the respondent's written explanation of the circumstances which caused the check to be dishonored as well as specific bank records for the preceding six months.

The petitioner served the respondent with a judicial subpoena duces tecum demanding the production of certain records on June 30, 1998.

Charge Two alleges that the respondent failed to promptly comply with the lawful demands of the petitioner for the production of his required financial records in connection with its investigation of three *sua sponte* complaints which form the basis of Charge One, in violation of Code of Professional Responsibility DR 9-102 (h) and (i) (22 NYCRR 1200.46 [h], [i]).

Charge Three, as amended, alleges that from in or about 1997 until June 1998, the respondent failed to preserve and maintain the deposit slips for his escrow accounts incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (d) and (i) (22 NYCRR 1200.46 [d], [i]).

Charge Four alleges that the respondent misappropriated and converted escrow funds entrusted to him as fiduciary for purposes other than that for which they were intended, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

On or about June 30, 1997, while acting in his capacity as an attorney, the respondent was entrusted with and deposited $17,000 into his Chase escrow IOLA account with respect to a real estate transaction involving his client, Henry Saltiel. The respondent was required to preserve that sum until at least the closing on September 25, 1997. Before the respondent's fiduciary obligation was discharged, the balance in his escrow account was depleted as indicated:

(1) to $16,523.92 on July 31, 1997; and

(2) to $15,380.06 on August 31, 1997.

Charge Five alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]), based upon the allegations set forth in Charge Four.

Charge Six alleges that the respondent misappropriated and converted escrow funds for purposes other than that for which

they were intended, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

On or about October 14, 1997, the respondent, while acting in his capacity as attorney, was entrusted with and deposited $17,600 into his Chase escrow account regarding a real estate transaction involving his client, Claire Uliano. The respondent was required to preserve that amount in his escrow account at least until the closing on December 1, 1997.

Prior to the discharge of the respondent's fiduciary obligation, the balance in the respondent's escrow account was depleted as follows:

(1) $16,668.78 on October 31, 1997; and

(2) $14,217.87 on November 30, 1997.

Charge Seven alleges that by reason of the foregoing, the respondent engaged in conduct involving dishonesty, fraud, and deceit, based upon the allegations set forth in Charge Six.

Charge Eight, as amended, alleges that the respondent misappropriated and converted escrow funds entrusted to him as fiduciary, for purposes other than that for which they were intended, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

On or about November 26, 1997, the respondent, while acting in his capacity as an attorney, was entrusted with and deposited $29,300 into his Citibank escrow IOLA account with respect to a real estate transaction involving his client, Irma Hojraj. On or about December 8, 1997, the respondent transferred $10,000 of those funds from his Citibank IOLA into his Chase IOLA account. The respondent was required to preserve at least that sum in his Chase account until the closing on or about February 4, 1998.

Before the respondent's fiduciary obligation to hold the $10,000 in escrow was discharged, the balance in the respondent's Chase escrow account was depleted as follows:

(1) to $8,850.52 on December 31, 1997; and

(2) to $6,252.67 on January 31, 1998.

The respondent was required to maintain a minimum of $19,300 in his Citibank escrow account on behalf of the Hojraj real estate transaction until the closing on February 4, 1998. Prior to the discharge of his fiduciary obligation to preserve the $19,300, the balance in the respondent's Citibank escrow account was depleted to $19,268.37 on January 31, 1998.

Charge Nine alleges that the respondent engaged in conduct

involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]), based on the allegations of Charge Eight.

Charge Ten alleges that the respondent misappropriated and converted escrow funds entrusted to him as fiduciary, for purposes other than that for which they were intended, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

On or about April 24, 1998, while acting in his capacity as attorney, the respondent was entrusted with and deposited into his Chase escrow IOLA account $38,500 on behalf of a real estate transaction involving his client, Mi-Hwa Lee. The respondent was required to preserve that sum in his escrow account until at least the transfer of the deposit into his Citibank escrow account on or about June 25, 1998. Before the respondent's fiduciary obligation was discharged, the balance in the respondent's Chase escrow account was depleted as follows:

(1) to $36,197.82 on April 30, 1998; and

(2) to $35,000.01 on May 31, 1998.

Charge Eleven alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]), based on the allegations of Charge Ten.

Charge Twelve alleges that the respondent entered into a business loan agreement which improperly permitted his Chase escrow account to be debited in the event he failed to make the minimum monthly loan payment, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

In or about November 1996, the respondent applied to Chase Manhattan Bank for a business revolving credit account (hereinafter BRC account) on behalf of the law firm of Cohen and Marks. That application was approved. On or about November 26, 1996, the respondent, on behalf of the law firm of Cohen and Marks, executed a BRC account agreement and a guaranty with the Chase Manhattan Bank.

Pursuant to the BRC account agreement and guaranty, Chase made the following deductions from the respondent's Chase IOLA account for the respondent's outstanding loan payments:

| | |
|---|---|
| 3/14/97 | $ 220.17 |
| 7/11/97 | 476.08 |
| 8/11/97 | 1,143.86 |
| 9/12/97 | 1,186.37 |
| 10/13/97 | 1,164.63 |
| 11/10/97 | 1,150.91 |
| 12/12/97 | 1,172.35 |
| 1/12/98 | 1,138.25 |
| 2/13/98 | 1,593.05 |
| 4/27/98 | 2,381.80 |
| 5/12/98 | 1,197.81 |
| 6/15/98 | 1,257.29 |

Charge Thirteen alleges that the respondent withdrew cash from an escrow account, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

On or about March 18, 1997, the respondent, acting as a fiduciary, received and deposited $25,000 into his Citibank IOLA account on behalf of a real estate transaction involving his client, Christina Chulick. That deposit was transferred into a subaccount within the respondent's Citibank IOLA account. At or about the closing of the Chulick real estate transaction, the respondent issued himself a fee check from his Citibank IOLA account in the amount of $7,997.57. He deposited it into his business operating account on or about May 28, 1997. Approximately two days later, that check was returned for insufficient funds.

On or about June 5, 1997, the respondent withdrew $8,000 in cash from his Citibank IOLA account and deposited it into his business operating account.

On or about June 6, 1997, the first check was redeposited and cleared the respondent's Citibank IOLA account.

On or about June 12, 1997, the respondent withdrew $8,000 from his business operating account and redeposited it into his Citibank IOLA account.

Charge Fourteen alleges that the respondent engaged in conduct which adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]), based on the allegations of Charges One through Thirteen.

In view of the respondent's admissions and the evidence adduced, the Special Referee properly sustained all 14 charges. Accordingly, the petitioner's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the respondent asks the Court to take into account that his behavior was "foolish and stupid, not venal," his previously unblemished record, character and witness statements attesting to his integrity and honesty, and the fact that no closings failed to occur due to problems with his escrow account. The respondent asks that any sanction imposed be limited to a one-year suspension.

Notwithstanding the respondent's alleged lack of venality, he failed to promptly cooperate with the petitioner in its investigation of three *sua sponte* complaints underlying this disciplinary proceeding and failed to properly maintain and promptly turnover his financial records from his escrow accounts (Charges One, Two, and Three). Moreover, the respondent misappropriated and converted escrow funds entrusted to him in four real estate transactions through the use of a business revolving credit loan that he secured through Chase Manhattan (Charges Four, Six, Eight, Ten, and Twelve) and knowingly permitted the invasion of those client real estate funds to satisfy his personal business loan obligation (Charges Five, Seven, Nine, and Eleven). Additionally, the respondent improperly withdrew cash from his escrow account (Charge Thirteen) and, in light of all the foregoing acts of professional misconduct, engaged in conduct adversely reflecting upon his fitness to practice law (Charge Fourteen).

Notwithstanding the mitigation advanced and the fact that the respondent has no prior disciplinary history, he is guilty of professional misconduct which warrants his disbarment.

Bracken, P. J., O'Brien, Ritter, Santucci and Krausman, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Martin Eric Marks, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (*see*, 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Martin Eric Marks is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an

attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.